UNITED STATES *v.* JANSON CO. (No. 3066)[1]

United States Court of Customs Appeals, November 19, 1928

*Charles D. Lawrence,* Assistant Attorney General (*Ralph Folks,* special attorney, of counsel), for the United States.
*Allan R. Brown* for appellee.

[Oral argument October 4, 1928, by Mr. Lawrence and Mr. Brown]

Before GRAHAM, Presiding Judge, and BLAND and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:
Certain glass insulators were imported at the port of New York and were classified as manufactures of glass, not specially provided

[1] T. D. 43075.

for, under paragraph 230 of the Tariff Act of 1922. The importer protested, claiming the goods to be parts of machines, under paragraph 372 of said act, or, alternatively, as parts of articles similar to phonographs, gramophones, or graphophones, under paragraph 1444 of said act. The court below sustained the protest under said paragraph 372, and from that judgment the Government has appealed. But one question, therefore, is here presented: Are these imported articles properly classifiable as manufactures of glass or as parts of machines?

The imported merchandise consists of elongated, spoollike, clear glass, insulators, each about 3½ inches in length and 1 inch in diameter, with round holes at each end about one-fourth inch in diameter. Three witnesses were called. Paul Simon, a member of the importing company, testified for protestant that these insulators were sold only to radio accessory houses; that they were used on outside radio antennæ, four, five, or six to the antenna, and are so used to insulate the same; that they were considered to be necessary "to restrain the conflictions"; that he did not know whether inside antennæ required insulators or not, but that the dealers had told him that the imported articles were necessary to the functioning of an outdoor antenna. William F. X. Band testified on behalf of protestant that the imported articles are used to insulate outside antennæ, in receiving radio sets, from the objects by which they are suspended; that an intake wire is attached to the antenna between the insulators, and leads in and is attached to the receiving set; that the intake wire "carries the current or vibrations of electricity that are picked up by the aerial wire, into the house." Brothwell H. Baker testified on behalf of the Government that insulators attached to an antenna prevent "grounding and loss of power"; that not all radio sets have outside antennæ; that some have inside antennæ, consisting of wires running around molding, or otherwise, and some have loops; that, as a rule, insulators are not used with inside antennæ.

In the record of T. D. 41506, offered and admitted in evidence in the case at bar, appears the testimony of Arthur William Harris, an electrical engineer. This witness described the operation of a radio receiving set, in brief, thus: Sound waves are converted into oscillating electric current which is radiated through space by a transmitting station. The electric current is picked up by the antenna of the receiving set, transmitted to the set and is there reconverted and amplified into sound waves, which, by means of a loud speaker or other device, can be heard by the human ear. This reconversion and amplification is brought about by the application of electrical energy.

The first matter for determination is whether radio receiving sets are "machines." Manifestly, unless they are, these imported articles could not be classified as parts of machines.

*Simon, Buhler & Baumann* v. *United States,* 8 Ct. Cust. Appls. 273, T. D. 37537, involved the classification of certain metal parts of a brewery mash filter. In the case cited, the Board of General Appraisers had held these various parts to be parts of a machine and dutiable as manufactures of metal. This court, speaking through Smith, J., said of this holding:

The filter which is to be made in part of the castings now under consideration can not be regarded as a mechanical contrivance for utilizing, applying, or modifying energy or force or for the transmission of motion, and therefore in no sense can it be properly called a machine. (See "machine," "mechanical," "mechanism," Standard Dictionary, Webster's New International Dictionary, and Lockwood's Dictionary of Mechanical Engineering Terms.) In fact, a filter for straining the malt from the malt liquor of the brewer's mash is no more a machine than is the kitchen colander or a box of sand for clearing muddy water. As a filter is not a machine, the castings which are destined to become parts of it are not machine parts and are consequently not excepted from the operation of paragraph 125.

The definition of a machine thus given was in conformity with the rule theretofore announced by the Federal Courts. *Corning* v. *Burden,* 15 How. 252 (267); *American Steel & Wire Co.* v. *Downing Wire & Fence Co.,* 160 Fed. 108.

On April 16, 1926, in *Allen Forwarding Co.* v. *United States,* T. D. 41506, 49 Treas. Dec. 706, the Board of General Appraisers had under consideration certain loud speakers for radio receiving sets. They were classified as manufactures of metal, under paragraph 399 of the tariff act of 1922, and were claimed by the importer to be dutiable as parts of machines, under paragraph 372 thereof. The court, *inter alia,* said:

However, we experience no hesitancy in holding that a radio receiving set is a machine, and that the present loud speakers and movements therefor are exclusively employed as parts thereof. As judicially defined in *Simon* v. *United States,* 8 Ct. Cust. Appls. 273, T. D. 37537, a machine is "a mechanical contrivance for utilizing, applying, or modifying energy or force, or for the transmission of motion." A radio set takes waves electrically broadcasted and by utilizing and applying thereto electrical energy or force so modifies those waves that it produces sounds through the mechanical vibration of its diaphragm Such a mechanism is peculiarly within the court's definition of a machine.

This ruling was afterward officially approved and followed by the Treasury Department in T. D. 42703.

We entirely agree with the construction of the court below in the case cited. In our opinion, a radio receiving set fully answers to the definition of a machine given in *Simon, Buhler & Baumann* v. *United States, supra.* A radio receiving set, having conducted to it the tenuous impacts of electrical energy, receives and manipulates them and in a most marvelous way converts them into a reproduction of sound. If this is not a machine it would be hard to conceive what would constitute one.

Having concluded that radio receiving sets are machines, the next inquiry is: Are these insulators for outside antennæ parts of the machine? It is shown by the testimony that where a radio set is fitted with, and depends upon, an outside antenna the set will not function properly unless the antenna is insulated by this or some other variety of insulator. It is true that a radio receiving set may use no outside antenna at all, but if it does use one insulators are necessary.

The question of what constitutes parts of machines has been frequently before the customs courts. In *Schweitzer* v. *United States*, 16 Ct. Cust. Appls. 285, T. D. 42872, certain papermakers' felt was imported, to be used on a Fourdrinier paper-making machine in the manufacture of tissue grade paper. It was shown that this grade of paper could not be made by certain paper-making machines, without the use of these felts, which the testimony showed were attached to the machines in question by putting them around the rolls, as endless belts. This court held, after citing many cases on the subject, that whether an article was a part of a machine depended, to a considerable extent, upon its use, holding that if the machine "is incapable of performing its ordinary and proper functions without it, it will be considered, at least for tariff purposes, as an integral part of the machine."

In *United States* v. *American Steel & Copper Plate Co.*, 14 Ct. Cust. Appls. 139, T. D. 41673, certain half-tone screens for reproducing cameras were involved. The testimony developed that although cameras might be used for ordinary purposes without these screens, if they were to be used for reproducing cameras the screens must be used. This court, after reviewing the authorities, held them to be parts of cameras.

In *United States* v. *Bosch*, 13 Ct. Cust. Appls. 569, T. D. 41434, certain automobile lamps and horns were held to be parts of automobiles, the evidence establishing that the machines could not be operated efficiently, safely, or properly without them.

In *United States* v. *Sheldon*, 15 Ct. Cust. Appls. 308, T. D. 42484, a metal condenser and parts thereof were claimed to be parts of a machine. It was shown that the condenser required a compressor to make it complete, and it was held, therefore, not to make a complete machine, but was treated as a part of one. This case was followed in *United States* v. *Moore*, 15 Ct. Cust. Appls. 322, T. D. 42489.

Abstract 318 (50 Treas. Dec. 614) held that porcelain guides used for guiding silk threads on spinning machines were parts of machines. The same holding appeared in Abstracts 320 and 321).

In Abstract 3017 (51 Treas. Dec. 1242) glass electrodes to be used on violet-ray machines were held to be parts of machines.

In *Downing* v. *United States*, T. D. 41471, 49 Treas. Dec. 575, glass capillary tubes used in making artificial silk were held to be parts of machines.

In T. D. 41249 (48 Treas. Dec. 535) certain glass dents used in silk-making machines, and which were essential to the operation of the machines, were held to be parts thereof.

The rule was well summed up in *Schweitzer* v. *United States, supra.* If a machine is incapable of performing its ordinary and proper functions without the article in question, then it constitutes a part of such machine.

This might be considered an answer to our inquiry here. It is, with force, argued that inasmuch as the radio receiving set fitted for the use of an outside antenna will not perform its ordinary and proper functions without the antenna, that, therefore, the antenna and all of its parts become a part of the receiving set. There is, however, a distinction which must not be lost sight of. In all of the cases above cited, the imported articles were integral parts of the machine itself, without which it was not a machine at all. In none of them did the question arise as to whether the mechanism which conveyed the power or energy to the machine was a part thereof. In the case at bar we find, from the record, that the antenna is but a contrivance for receiving the electrical energy and conveying and delivering it to the receiving set. It is a matter of common knowledge, of which we may take judicial notice, that such antennæ are separate units, easily detached from the set and usable with any receiving sets where such antennæ are required. In this respect they may be well said to differ from loops or other contrivances which, while they perform the same functions as outside antennæ, yet are built into, and an integral part of, the receiving set itself.

In *United States* v. *Outerbridge*, 7 Ct. Cust. Appls. 223 (227), T. D. 36511, this court held that, it being conceded that the boiler of a marine engine is no part of the engine itself, it followed that a filter box is also not such a part, and that the same conclusions arise as to material, such as bolts to fasten the engine to its foundation and to the shafting.

In *Columbia Shipbuilding Co.* v. *United States*, 11 Ct. Cust. Appls. 281, T. D. 39085, certain steam engines and fans, or blowers, were involved and were assessed for duty as entireties, the importer claiming segregation for duty purposes. The court held that the engine and fan not being connected together, except by a coupling and removable bolts, and either being capable of use without the other, each was an entirety, notwithstanding the fact they were designed to be operated together.

*Korander* v. *Penn. Bridge Co.*, 16 Cal. App. 249, 116 Pac. R. 384, further illustrates this distinction between separable units of machinery designed to be operated together. In the case cited, the statute

of California required an employer to compensate his employee for injuries resulting "from the wrongful act, neglect, or default of a coemployee * * * employed upon a machine, * * * or other appliance than that upon which the employee is injured or employed." The plaintiff was employed upon a pile driver which was operated by means of a rope passing over a drum, the rope receiving its power from a portable steam engine located some distance away. By the negligence of the engineer of this engine the plaintiff was injured. It was held that the plaintiff and engineer were not employed upon the same machine.

These cases, and the reasoning thereof, we believe, point out the rule for a decision of the case at bar. These glass insulators are merely a part of the power plant, a separate entity, which supplies energy to the machine. The antenna performs much the same function as a separately built steam plant does to a steam engine which utilizes its power, or a central station which generates and furnishes the electric power for the operation of telephone instruments or electric motors. No one would contend that these separate power units were parts of the machines in question, but they are as much so as the outside antennæ in question are a part of the radio receiving sets which they serve. The steam engine will not operate without steam; the sewing machine will not operate without power; the threshing separator will not function without some kind of applied power; but they are nevertheless, complete machines. This is likewise true with a radio receiving set. It matters not if the electric impulses which come from the surrounding space are faint and wellnigh imperceptible. They constitute, nevertheless, energy and forceand are the power without which the radio receiving set will not function.

For the reasons given the protest should have been overruled. The judgment of the court below is therefore *reversed* and the cause *remanded* for further proceedings in conformity with this opinion