The judgment of the United States Customs Court, Third Division, is *reversed*.

.UNITED STATES *v*. L. OPPLEMAN, INC. (No. 4097)[1]

United States Court of Customs and Patent Appeals, November 1, 1937

*Joseph R. Jackson*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General, and *William Whynman*, special attorney, of counsel), for the United States.

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for appellee.

[1] T. D. 49271.

[Oral argument October 8, 1937, by Mr. Lawrence and Mr. Allerton deC. Tompkins]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Second Division, holding certain "aneroid barometers" dutiable as machines at 27½ per centum ad valorem under paragraph 372 of the Tariff Act of 1930, as claimed by appellee, rather than at 45 per centum ad valorem under paragraph 397 of that act, as articles, not specially provided for, composed of metal "but not plated with platinum, gold, or silver, or colored with gold lacquer," as classified by the collector at the port of New York.

The paragraphs in question, so far as pertinent, read:

PAR. 372. * * * all other machines, finished or unfinished, not specially provided for, 27½ per centum ad valorem * * *.

PAR. 397. Articles or wares not specially provided for, * * * if composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal, but not plated with platinum, gold, or silver, or colored with gold lacquer, whether partly or wholly manufactured, 45 per centum ad valorem.

On the trial in the court below, an aneroid barometer, representative of the involved merchandise, was introduced in evidence as Exhibit 1. The witness, Samuel Sanders, secretary of the appellant corporation, took the barometer apart and explained the operation of its mechanism. We quote from his testimony:

—A. The air pressure acting on this diaphragm, which I have marked "A," causes this lever, which is attached to the spring "L," which takes up a portion of the vacuum and transmits it to the lever "O." The lever "O," which is bearing on a lever "P," to which is attached a fine chain; the chain is attached to a staff marked "S" to which is attached the indicator needle "C" which shows on the dial, the air pressure, whether it is a falling or rising.

Q. Is there a hairspring on that mechanism?—A. There is a hairspring.

Q. Where is that located?—A. That is attached to the staff "S."

Q. Does the spring, which you have marked "L," rise and fall to a slight extent when the vacuum, which you have marked "A," rises and falls?—A. Yes, sir.

*     *     *     *     *     *

Q. Does the variance of that atmospheric pressure cause the diaphragm on that vacuum marked "A" to rise and fall?—A. Yes, sir.

*     *     *     *     *     *

Q. Does anything move in Exhibit 1?—A. Yes sir.

Q. What moves?—A. There are several things which move.

Q. Will you kindly name them?—A. The hairspring, the chain, and the lever move.

Q. How did you mark the lever?—A. The lever which moves is marked "P." The hairspring, which I could not mark, as it is too fine, and the indicator "C."

Q. Does the spring move, which you marked "L"?—A. That moves up and down.

Judge DALLINGER. How many different things there move when the atmospheric pressure changes?

The WITNESS. Nine.

Judge DALLINGER. Nine things?

The WITNESS. Yes, sir.

By Mr. TOMPKINS:

Q. Do they all move because of the pressure on the vacuum?—A. Yes, sir.

He further stated that the barometers in question were used in homes, offices, and elsewhere, and that the pressure of the atmosphere was indicated on the dial or face of the instrument.

In its decision, the trial court distinguished the facts in the case at bar from those appearing in the case of *United States* v. *Race Co.*, 22 C. C. P. A. (Customs) 327, T. D. 47362, wherein it was held that so-called "dialysers," used for the purpose of extracting pure caustic soda from a solution of impure caustic soda, were mere "receptacles," within the common and legal acceptation of that term, "in which the force of osmosis" was "permitted to operate"; quoted at length from our decision in the case of *United States* v. *Janson Co.*, 16 Ct. Cust. Appls. 315, T. D. 43075, wherein it was held, among other things, that radio receiving sets were machines, within the meaning of that term as defined by this court in the case of *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, T. D. 37537; and held that, as the involved aneroid barometers receive "the energy and force of the atmospheric pressure and, by means of the mechanical moving parts, so * * * [apply] such energy and force as to enable the device to indicate on the dial whether such pressure is rising or falling," they were machines and dutiable as such, as claimed by the importer.

Although conceding, as indeed they must, that the involved articles have mechanical moving parts, counsel for the Government contend that, because the operation of such parts is due "to the force of nature and not * * * any mechanical means," the articles in question are not machines, and, therefore, are not dutiable as such under paragraph 372, *supra*, as held by the trial court.

Counsel for the Government further contend that the involved articles are not mechanical contrivances, because "The dial and the parts contained in the barometer are not operated by any human or mechanical means but by certain forces of nature and there is nothing that a man or a machine can do which can affect the direction of the wind, the force of the wind, or the moisture in the air, which three forces, singly or in combination, react upon and affect the aneroid barometer," and that the issues in this case are controled by the decisions of this court in the cases of *Simon, Buhler & Baumann (Inc.)* v. *United States, supra, United States* v. *Alexander McNab*, 21

C. C. P. A. (Customs) 406, T. D. 46928, and *United States* v. *Race Co.*, *supra.*

In the case of *United States* v. *Alexander McNab, supra,* this court held that certain torsion meters, used to determine the horsepower of an engine of a vessel transmitted through the propeller shaft, having no operating function of their own but revolving merely with the propeller shafts, each meter having two mirrors, one stationary and one movable, which cast a reflection from a light upon a scale, were not mechanical "contrivances for utilizing, applying, or modifying energy or force, or for the transmission of motion," within the meaning of those terms as used in the *Simon, Buhler & Baumann (Inc.)* case, *supra,* and, therefore, were not dutiable as machines under paragraph 372 of the Tariff Act of 1922.

We are in agreement with the trial court's holding that the decisions in the cases of *United States* v. *Race Co., supra,* and *United States* v. *Alexander McNab, supra,* are not controlling of the issue in the case at bar.

A "barometer" is defined in Webster's New International Dictionary as follows:

An instrument for determining the weight or pressure of the atmosphere, and hence for judging of the probable changes of weather, for ascertaining the height of any ascent, etc. * * * It is made in its simplest form * * * by filling a graduated glass tube about 34 inches long with mercury and inverting it in a cup containing mercury. The column of mercury in the tube descends until balanced by the weight of the atmosphere, and its rise or fall under varying conditions is a measure of the change in the atmospheric pressure. * * * The *marine, mountain, siphon,* and *wheel barometers* are also mercurial, but the *aneroid barometer* is based on a different principle.

An "aneroid barometer" is defined by the same authority as follows:

* * * a barometer in which the action of atmospheric pressure, in bending the thin corrugated top of a closed and partially exhausted metallic box or in distorting a thin-walled bent tube of metal, is made to move a pointer. It is portable, but is less accurate than the mercurial barometer.

It is the aneroid, not the mercurial, barometer with which we are here concerned. It will be observed from the dictionary definitions that the two barometers are entirely different, and operate on entirely different principles.

The aneroid barometers here involved operate in accordance with mechanical principles. That they are mechanical contrivances, having operating movable parts, such as springs, hairsprings, levers, chains, and diaphragms, without which parts and their coordinate movements the articles would not function, cannot be seriously questioned. They are somewhat like weighing or computing scales which are clearly machines, and were held to be dutiable as such under

paragraph 372 of the Tariff Act of 1922 by the Board of General Appraisers (now United States Customs Court) in the case of *C. J. Tower & Sons* v. *United States*, T. D. 40876, 47 Treas. Dec. 569, which decision was called to the attention of the Congress during its consideration of paragraph 372 of H. R. 2667, which later became paragraph 372 of the Tariff Act of 1930. See Summary of Tariff Information, 1930, Vol. 1, p. 841.

As we understand the argument of counsel for the Government it is, in the final analysis, that the involved articles are not machines, within the purview of paragraph 372, *supra*, because their operation depends upon natural energy and force, rather than upon energy or force artificially produced and actuated.

The fallacy of that argument is exposed, we think, when it is recalled that various kinds of complicated machines are operated by water power (running streams, falling water, and the tides), such, for example, as milling machines. Certainly, a windmill is no less a machine simply because it is operated by a natural force—the wind.

We are of opinion that the question of whether the involved articles are machines within the purview of paragraph 372, *supra*, does not depend upon the source of the force or energy which motivates them, but rather upon the character and operation of the articles themselves.

We think it is clear from what has been said that the involved articles are mechanical contrivances which utilize and apply energy or force, and are, therefore, machines. It is true, they do not apply energy or force or transmit motion to some other device, but neither do cash registers, *eo nomine* provided for in paragraph 372, *supra*, radio receiving sets, held· to be machines in the case of *United States* v. *Janson Co., supra*, or weighing or computing scales, held to ·be machines in the *C. J. Tower & Sons* case, *supra*, and many other machines which we need not enumerate here. Nevertheless, they are machines and, in the absence of a more specific designation, dutiable as such under paragraph 372, *supra*.

We are in entire accord with the reasoning and conclusion reached by the trial court. The judgment is accordingly *affirmed*.

### DISSENTING OPINION

Lenroot, Judge: I feel impelled to dissent from the conclusion reached by the majority herein. In my opinion the involved barometers are not machines, classifiable under paragraph 372 of the Tariff Act of 1930, but were properly classified by the collector.· They are not, in my judgment, contrivances "for utilizing, applying, or modifying energy or force or for the transmission of motion," within the meaning of those terms as used in the leading case of *Simon, Buhler & Baumann (Inc.)* v. *United States*, 8 Ct. Cust. Appls. 273, T. D. 37537, and it seems to me that the conclusion reached by the majority is

contrary to our construction of the above-quoted words in the case of *United States* v. *McNab*, 21 C. C. P. A. (Customs) 406, T. D. 46928.

In the latter case we held that a device used to determine the horse-power of the engine of a vessel transmitted through the propeller shaft was not a machine for the reason that it did not utilize, apply, or modify energy, and did not transmit motion. We there said:

We do not think the article in question is a mechanical contrivance for utilizing, applying, or modifying energy or force, or for the transmission of motion, within the meaning of those terms as used in the leading case of *Simon, Buhler & Baumann, Inc.* v. *United States*, 8 Ct. Cust. Appls. 273, T. D. 37537.

The device certainly does not transmit motion, for it is attached to nothing but the propeller shaft, which causes the device to revolve. While it may be said that motion is transmitted from one part of the device to another, there is no motion transmitted outside of the device itself. It is clear that the device does not modify energy or force. The only energy or force applied is that exerted by the engine upon the propeller shaft, and the torsion meter does not in any way modify such energy or force.

But one question remains, viz, Does the torsion meter utilize energy or force? Its only purpose is to measure the energy transmitted through the propeller shaft for the purpose of driving the propeller of the vessel. The torsion meter does not take from said propeller any appreciable amount of energy, and, as we understand it, reproduces only in a magnified way the action of the propeller shaft itself.

We think that the term "utilizing * * * energy or force" must have a reasonable construction, and while it is not possible to declare exactly what constitutes a utilization of energy or force, we are of the opinion that the mechanism here involved should not be regarded as utilizing energy.

The mere fact that the contrivance there involved did not possess gears, levers, or cog-wheels was not relied upon by us in holding that it was not a machine.

I submit the barometers here involved do not utilize energy. They merely measure it. In the case last above cited the torsion meters received energy from the propeller shaft, but only to measure the energy transmitted through the propeller shaft. So here, the device does not utilize atmospheric pressure, but merely measures it. It does not modify the energy created by atmospheric pressure in any way. It clearly does not transmit motion, for, as was said in the torsion meter case, while it may be said that motion is transmitted from one part of the device to the other, there is no motion transmitted outside of the device itself.

Thus it has none of the elements of a machine declared essential in the definition in the *Simon, Buhler & Baumann* case, *supra*, as further interpreted by us in the *McNab* case, *supra*.

In my opinion the conclusion of the majority is not consistent with our holding in the case last cited, and will open paragraph 372, *supra*, to a large number of devices which I do not believe have heretofore been considered to be machines. A few of such devices that come to my mind are automobile tire gauges, dial thermometers,

gasoline gauges, oil, water, and steam gauges, and a host of other devices not *eo nomine* provided for in the Tariff Act of 1930.

In my judgment, any device which simply measures energy without the application of any force or energy outside of the energy to be measured is not a machine, and therefore the judgment appealed from should be *reversed*.

GARRETT, Judge, joins in the dissent.