(C. D. 1019)

STANDARD FRUIT & STEAMSHIP Co. v. UNITED STATES

United States Customs Court, Second Division

(Decided August 2, 1946)

*Philip Stein* for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Joseph E. Weil*, special attorney), for the defendant.

Before TILSON, KINCHELOE, and LAWRENCE, Judges

LAWRENCE, Judge: Plaintiff imported into the port of New Orleans, in four shipments, eight reciprocating steam engines and parts and eight electric dynamos and parts, except in the importation covered by protest 106414–K where some parts were missing. At the trial the four above-enumerated causes of action were consolidated and heard as one case.

The collector of customs classified the reciprocating steam engines and parts as dutiable at the rate of 15 per centum ad valorem under the *eo nomine* provision therefor in paragraph 372 of the Tariff Act of 1930. The electric dynamos and parts were assessed with duty at the rate of 35 per centum ad valorem under the provision in paragraph 353 of said act for "All articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy," and parts thereof.

The propriety of the classification made under said paragraph 372 is not questioned. In fact, the single claim of the plaintiff is that the same classification should have been applied to all the articles comprising the dynamos and parts on which duty was levied under said paragraph 353. In other words, plaintiff insists that the collector should have treated the engines and dynamos as entireties and dutiable accordingly at 15 per centum ad valorem under said paragraph 372.

In support of its claim, plaintiff called as the only witness herein John Low, its marine superintendent for the past 20 years. He testified that he had supervised and directed the installation of the imported engines and dynamos in the vessels of plaintiff; that he had ordered them as generator sets, each set composed of an engine and dynamo bearing the same number; and that as installed in place in the

vessel the engine was connected to its corresponding dynamo by a coupling and bolts specially made for that purpose.

On cross-examination the witness said the movement of a reciprocating engine was up and down. Asked "And what does it operate?" he replied: "Operates the dynamo, and it operates a fan or operates a circulating pump, or anything requiring a circular motion," adding "a propeller wheel." The dynamo, he said, was "a generator of electricity" which could "produce, modify, rectify, control or distribute electrical energy" and that it could only be operated by a steam engine or "a water wheel." Asked specifically "Does a dynamo produce electrical energy," he answered "Exactly, Yes." He said it could be operated by a turbine steam engine; that the electricity produced was for "illuminating the vessel"; that the dynamo is made by a concern different from the one that makes the reciprocating steam engine; and that while reciprocating steam engines could be used for other purposes, nevertheless those in the present importation were used exclusively in the vessels of the plaintiff.

In its brief filed herein plaintiff states:

It will be noted that the protest filed by plaintiff in each of the cases consolidated herein claims "the reciprocating steam engine and/or parts including dynamos" to be dutiable at 15% under Paragraph 372. While the steam engine portion has already been returned at 15% ad valorem, the protest necessarily refers to and includes it (the reciprocating steam engine and parts), in view of the claim that it must be considered as a unit together with the dynamo, the plaintiff's contention being that the entire shipment is an entirety dutiable at the same rate applied to the reciprocating steam engine portion (15% ad valorem).

On the established facts we are satisfied that this case is controlled by our decision in *Standard Fruit & Steamship Co.* v. *United States*, 11 Cust. Ct. 71, C. D. 796. Plaintiff, however, in its brief seeks to distinguish the facts there and here present. In its statement of the two cases it says:

This case, arising under the Tariff Act of 1930, involves articles exactly like others previously considered by this Honorable Court in a case involving the same parties and a similar issue, decided July 14, 1943, partly in favor of plaintiff, and reported in C. D. 796, 11 Cust. Ct. [71], Advance Sheets Vol. 79, No. 5, page 13. That portion of the issue decided unfavorably to plaintiff in C. D. 796 has been presented again by plaintiff in the instant case on a record by which plaintiff believes this case is made distinguishable from the unfavorable portion of the decision in C. D. 796, and the cases therein cited in support of the Court's adverse holding therein.

In C. D. 796, *supra*, the Collector had classified an importation consisting of a reciprocal steam engine and parts including a dynamo, as an entirety, dutiable at 35% ad valorem under Paragraph 353 of the Tariff Act of 1930. However, at the trial the government admitted that the reciprocating steam engine, being *eo nomine* designated in Paragraph 372 of the said Act, was dutiable at 15% ad valorem thereunder, and would now be so classified. The court accordingly held the reciprocating steam engine portion of the shipment to be dutiable at 15%, but denied the importer's claim that the dynamo portion of the importation

should likewise be held to be dutiable at 15% ad valorem along with the reciprocating steam engine, the court thereby affirming the classification by the collector of the dynamo portion of the shipment at 35% ad valorem under Paragraph 353.

In the case at bar, the collector, following the decision of this Honorable Court in C. D. 796, *supra,* has classified the reciprocating steam engine portion of the importation at 15% ad valorem under Paragraph 372, and has returned the dynamo portion at 35% ad valorem under Paragraph 353.

Accordingly, the issue here is confined to the so-called dynamos (and parts) which were imported with, and as part of the reciprocating steam engine.

Plaintiff further alleges in its brief that—

In the case at bar, there is no dispute about the fact that the importations in each case consolidated herein, consist of a complete reciprocating steam engine with parts, intended to generate electricity for illumination of the vessels for which each was specially made, fitted, and installed. * * *

It is somewhat paradoxical to characterize the subject of each of the present importations as consisting "of a complete reciprocating *steam* engine * * * intended to generate *electricity.*" [Italics supplied]. If we were to hold that a dynamo loses its tariff identity as such and becomes an integral and constituent part of the steam engine, which furnishes the motivating power, it would be just as logical to hold that because it is merely the power-generating mechanism the engine is no longer an engine but becomes for tariff purposes an integral and indispensable part of the dynamo. The fact is, however, that the engine and the dynamo are two separate and distinct dutiable entities. Therefore, plaintiff's description of each importation as a "complete reciprocating steam engine" is not altogether accurate, any more than is its statement that "there is no dispute about the fact." The contention that the two mechanisms constitute an entirety is emphatically denied by the defendant. Point II of the latter's brief is devoted exclusively to an effort at convincing the court that "the imported dynamos and steam engines do not constitute entireties but are separately dutiable." It is there pointed out that "the record clearly demonstrates that the dynamos are separate and distinct articles from the reciprocating steam engines"; that the two mechanisms were made by different manufacturers and were shipped together only because the importer's foreign agent attended to the procurement and shipment of the several articles; and that the engines can run without the dynamo, and vice versa if the latter is connected with some other power, such as a water wheel.

Plaintiff's theory of the case seems to be predicated on the assumption that the dynamo is in fact and in law an integral and constituent part of the reciprocating steam engine, since in its brief it is argued that—

It is evident that when Congress provided for reciprocating steam engines in Paragraph 372, *supra,* it did not have in mind separating the reciprocating steam

engines from the parts for which it was made and which are essential to its function as a reciprocating steam engine.

It may be observed in passing that there is nothing in the present record to indicate that the imported steam engines were not complete in every way as such and fully capable of performing all the functions for which they were constructed and designed. In fact the reverse is true. The brief continues:

* * * On the other hand, by the provision in Paragraph 353, under which the dynamos in question were separately treated and returned by the collector at 35% ad valorem, Congress, when it provided for articles suitable for producing * * * electrical energy * * * had no intention of separating from a reciprocating steam engine *eo nomine* provided for, that portion which constitutes an electrical device with which it had been made into a single unit, for duty purposes * * *

As we read the law the legislative intent in the premises is very clearly manifested. Paragraph 372, *supra*, provides *eo nomine* for reciprocating steam engines, whereas paragraph 353, *supra*, covers, among other things, "articles suitable for producing * * * electrical energy," which is the sole function of the present dynamos. If it were possible (and we are not prepared to say that it is mechanically feasible) so to construct a mechanism that it will perform in and of itself the dual function of simultaneously furnishing steam and generating electrical energy, we question whether any such marvelous contrivance would be classifiable merely as a reciprocating steam engine. Obviously, it would be a combined engine and dynamo, and we do not believe that such a device was ever contemplated by the provision in paragraph 372 any more than by the pertinent provision in paragraph 353, *supra*. What the legislators had in mind in the one instance was a reciprocating steam engine, and in the other an article which produces electrical energy, and in neither case a combination of the two mechanisms. This must be so because presumably the lawmakers knew that unless and until power is supplied to it a dynamo cannot produce electrical energy. But that fact does not make the dynamo a part of the power device.

In *Norma Co. of America* v. *United States*, 6 Ct. Cust. Appls. 89, T. D. 35338, our appellate court, discussing what constituted a part of a machine tool under the Tariff Act of 1909, said:

It will be noticed that paragraph 197 contains no provision for parts of machine tools; hence thereunder the pertinent question here is what are the constituent parts of the machine tools in this case.

We think, speaking generally, the true interpretation of the paragraph is that any detachable or adjustable parts of a machine tool which are indispensable to enable it to perform the manifold operations for which it is designed, if imported therewith, not including reserve, duplicate, extra, or spare parts or purely hand tools or appliances, and *not including belts designed to connect the tool with the motive power*, are properly parts of a machine tool. * * * [Italics supplied.]

It is plain to see that if the connecting belt is not a part of the machine tool then *a fortiori* the same must be true of the power mechanism which operates the tool.

In *Johnson Iron Works, Dry Dock & S. B. Co.* v. *United States,* 48 Treas. Dec. 237, T. D. 41132, this court (then the Board of General Appraisers) differentiated between the terms "machine" and "machinery." For instance, it held that a propeller may be part of the machinery of a vessel but not necessarily an integral part of the engine which operates it; that "machinery" is a more comprehensive term than "machine"; that the former might embrace many machines and devices operating as a unit, while the latter is ordinarily limited to a single mechanical contrivance for applying, utilizing, or modifying energy or force, or for the transmission of motion. We there reasoned that—

* * * Merely because a dynamo is connected by a belt with the machine which supplies the operating power does not make the dynamo part of the power machine. Each is a complete machine in itself, but when used together the two and the connecting belt might properly be called "machinery" without making the belt a part of either machine or one machine a part of the other.

Also, in *C. J. Tower & Sons* v. *United States,* 47 Treas. Dec. 1076, Abstract No. 49424, this court (then the Board of General Appraisers) passed upon an importation described by the appraiser as a "dumbwaiter, composed of a wooden box and the necessary hoisting equipment, operated by an electric motor." The collector treated the shipment as an entirety and classified it under paragraph 399 of the Tariff Act of 1922 as an article not specially provided for composed wholly or in chief value of metal. The importers claimed that it should have been classified as a machine and parts thereof under paragraph 372 of said act. The claim was overruled, the board saying:

* * * we are no more prepared to hold as a part of the motor the wooden box which the motor operates than we would be willing to suggest that an ordinary passenger elevator is part of the motor or engine which operates it, or to hold an automobile or motor vehicle to consist of a motor and parts of a motor. While the present motor may be a machine, nevertheless it is only one of a number of articles which together constitute a single entity which is employed as a hoisting apparatus. As set up and installed, the apparatus is a complete structure in itself, with the motor as the power generating part, and the latter no more determines the tariff status of the whole than would any of the other constituent parts

Again, in *United States* v. *Janson Co.,* 16 Ct. Cust. Appls. 315, T. D. 43075, our appellate court had before it the question of the dutiable classification of certain glass insulators which were parts of outside radio antennae. They were classified by the collector as dutiable under paragraph 230 of the Tariff Act of 1922 as manufactures of glass, and were claimed to be parts of radio receiving sets and as such properly classifiable under paragraph 372 of said act as parts of machines not specially provided for. After an exhaustive review of

various decisions on the subject of what are parts of machines in the tariff sense, the appellate court said:

These cases, and the reasoning thereof, we believe, point out the rule for a decision of the case at bar. These glass insulators are merely a part of the power plant, a separate entity, which supplies energy to the machine. The antenna performs much the same function as a separately built steam plant does to a steam engine which utilizes its power, or a central station which generates and furnishes the electric power for the operation of telephone instruments or electric motors. No one would contend that these separate power units were parts of the machines in question, but they are as much so as the outside antennae in question are a part of the radio receiving sets which they serve. The steam engine will not operate without steam; the sewing machine will not operate without power; the threshing separator will not function without some kind of applied power; but they are nevertheless, complete machines. This is likewise true with a radio receiving set. * * *

Of course, there are many machines which may have incorporated in their internal mechanisms the source of their motivating power. For instance, locomotives, portable tools, washing machines, typewriters, sewing machines, and numerous other mechanical contrivances and devices which are so constructed and designed as to be operated by their own electric motors, generators, and so forth; but it is difficult to conceive of a single engine or machine which in and of itself is so constructed that it may generate two kinds of power—steam and electricity. At any rate, as hereinbefore pointed out, we are satisfied that any such combined mechanism is not within the purview of the *eo nomine* provision in said paragraph 372, *supra*, for reciprocating steam engines, nor within the scope of articles for producing electrical energy in paragraph 353, *supra*.

As hereinbefore stated, we believe this case to be governed by our decision in *Standard Fruit & Steamship Co.* v. *United States, supra*, which involved merchandise concededly similar to that here present. Following that authority, we overrule all claims of the plaintiff and affirm the decision of the collector in each instance.

Judgment will be entered accordingly.