(C.D. 2929)

BORDER BROKERAGE COMPANY, INC., ET AL. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided March 22, 1967)

*Glad & Tuttle* (*George R. Tuttle* of counsel) for the plaintiffs.
*Barefoot Sanders*, Assistant Attorney General (*Bernard J. Babb* and *Avram Weisberger*, trial attorneys), for the defendant.

Before RAO and FORD, Judges

FORD, Judge: The merchandise involved in these three protests, consolidated for purposes of trial, consists of power chain saws powered by gasoline engines, which were imported as units and classified as machines, not specially provided for, under paragraph 372 of the Tariff Act of 1930, as modified by T.D. 54108.

Plaintiffs claim the power units used with the chain saws should be constructively segregated and classified as internal-combustion engines of the carburetor type under paragraph 372 of the Tariff Act of 1930, as modified by T.D. 52739. Plaintiffs also claim certain engine replacement parts, which were classified as parts of machines, not specially provided for, under paragraph 372, as modified, *supra*, are dutiable as parts of internal-combustion engines under said paragraph, as modified, *supra*.

The pertinent portions of the applicable tariff provisions are as follows:

Paragraph 372, as modified by T.D. 54108:

Machines, finished or unfinished, not specially provided for:

\*　　\*　　\*　　\*　　\*　　\*　　\*

Other (\* \* \*) _____ 11½% ad val.

Paragraph 372, as modified by T.D. 52739:

Machines, finished or unfinished, not specially provided for:

\*　　\*　　\*　　\*　　\*　　\*　　\*

Internal-combustion engines of the carburetor
type _____ 8¾% ad val.

\*　　\*　　\*　　\*　　\*　 ··　\*　　\*

Parts, not specially provided for, wholly or in chief value of metal or porcelain, of any article provided for in any item 372 in this Part:

\*　 ·,　\*　　\*　　\*　　\*　　\*　　\*

Other _____ The rate for the
article of which
they are a part.

The subject merchandise consists of various models, and parts, of power chain saws, each of which consists of a "power head" and a cutting attachment. The power head includes an internal-combustion engine, a gas tank, handles to permit its operation, and a driving sprocket and clutch assembly which drive the bar and chain. The cutting attachment consists of a guide or cutting bar and the saw

chain which engages the teeth surrounding the drive sprocket. Other components, also part of the importation, such as a chain tensioner, a bucking spike, and a chain oil system, were not allocated specifically by the testimony to either the power head or the cutting attachment.

The power chain saw is packed and shipped as a complete unit incorporating the internal-combustion engine and other attachments which make it suitable for chain saw use. The bar and chain in some instances also are shipped in the same box. Although the internal-combustion engine was originally designed as a "cart" engine, chain saw application is the primary purpose for its manufacture and its major use.

In support of its claims, plaintiffs rely heavily upon the decision of the Court of Customs and Patent Appeals in *Geo. S. Bush & Co., Inc.* v. *United States*, 41 CCPA 33, C.A.D. 525, modifying in part the lower court decision reported at 28 Cust. Ct. 308, C.D. 1429. We deem the decision of the appellate court controlling here.

In the *Geo. S. Bush & Co., Inc.*, decision, this court held that a gasoline-driven power saw, imported in a knocked-down condition, composed of an internal-combustion engine of the carburetor type, a gear-housing assembly, a cutter bar and chain with saw teeth, a handlebar assembly, and a tailstock assembly, is an entirety for customs purposes and properly classifiable as a machine, not specially provided for, under paragraph 372 of the Tariff Act of 1930. Each of the various component parts, the court held, is essential to the proper functioning of the whole and each loses its separate name and character when united with all of the others. The article, known and described as a "gasoline-driven power saw," normally functioned with an internal-combustion engine of the carburetor type. The court then stated:

* * * It [the gasoline-driven power saw] cannot operate without such engine, unless adaptations and modifications are made for the use of electric motors or air compressors. Neither can the engine of a gasoline-driven power saw, without adaptation, be devoted to any other use. * * *

The quoted language apparently was the basis for the disagreement upon appeal to the Court of Customs and Patent Appeals which, contrary to the decision of the trial court, held the gasoline engine to be segregable and dutiable as such. *Geo. S. Bush & Co., Inc.* v. *United States, supra.* The majority decision, noting that the trial court held a distinctive use of the imported engines could not be effected without a basic modification of the engine or the saw mechanism, found that the record indicated that the different means of attachment might or would have to be employed from that used with the imported saws should the imported engine be detached and other power producing units used. There was absolutely no evidence, however, that the engine itself must be altered to make it function as a

power producing unit for various purposes which the engine otherwise could serve, nor that the sawing mechanism itself must be altered when propelled by compressed air or electric power.

The guidance we find in the appellate court's decision indicates that a gasoline-driven power saw is not classifiable as an entirety if the gasoline engine can be detached and used for other purposes without alterations to the engine itself and if the sawing mechanism may be powered by compressed air or electricity without alterations in the sawing mechanism itself.

We believe this interpretation of the appellate court's decision is consistent with well-established customs law concerning classification of power units. As a general rule, two machines imported and intended to be used together, such as a steam engine and fans (*Columbia Shipbuilding Co. et al. v. United States*, 11 Ct. Cust. Appls. 281, T.D. 39085), or an electric motor and compressor (*John A. Steer & Co. v. United States*, 24 CCPA 293, T.D. 48737), or a steam engine and electric dynamo (*Standard Fruit & Steamship Co. v. United States*, 17 Cust. Ct. 50, C.D. 1019), one to supply power to the other, do not merge to form an entirety and, therefore, are dutiable separately. However, if the attachment or integration of the power unit into the machinery was such that substitution of another type of power unit was not practicable without substantial structural alterations in, or reconstruction of, the machine, the power unit is an essential part of the machinery and classifiable as an entirety with it. See: *United States v. Dryden Rubber Co.*, 22 CCPA 51, T.D. 47050; *Ralph C. Coxhead Corp. v. Unted States*, 22 CCPA 96, T. D. 47080.

It is well settled, of course, not only that the collector's classification is presumed to be correct but also that he found all the facts necessary to support his classification to exist. *F. H. Kaysing v. United States*, 49 CCPA 69, C.A.D. 798.

To overcome these presumed findings of fact, the plaintiff must produce substantial evidence in the record to establish its claim. *United States (Index Industrial Corp., Party in Interest) v. National Starch Products, Inc.*, 50 CCPA 1, C.A.D. 809. It is pertinent, for reasons which will appear below, to state here that substantial evidence has been held to mean evidence affording a substantial basis of fact from which the fact in issue can be reasonably inferred. A mere declaration of an essential ultimate fact in issue is not substantial evidence. *Brooks Paper Company v. United States*, 40 CCPA 38, C.A.D. 495.

With these principles of applicable law in mind, we turn to an examination of the record presented to us to determine if plaintiffs have sustained their burden of proving that the subject importation consists of an internal-combustion carburetor-type engine, which can be used for other purposes without substantial alteration to the engine

itself, and a sawing mechanism, which can be powered by compressed air or electricity without substantial alterations to the sawing mechanism itself.

On the issue of whether the cutting mechanism could be powered by means other than the imported engine without substantial alterations to the mechanism itself, one of plaintiffs' witnesses, Mr. C. E. Pulham, the general manager of Power Machinery, Ltd., the manufacturer of the imported saws, testified, in response to questions by plaintiffs' counsel:

Q. Can the model chain saws which you export and manufacture be powered by electricity, or air?—A. Yes, they can. You're speaking of the bar and chain now?

Q. Yes. The bar and chain.—A. Yes.

The quoted questions and answers comprise all the testimony concerning the substitution of electricity or air as alternate means of power for the imported chain saws. Consequently, there is nothing presented in the record to overcome the collector's presumed finding that substantial alterations would have to be made in the cutting mechanism itself in order to use air or electricity as alternate means of power.

With respect to the other issue, the use of the "power head" for purposes other than supplying power to the cutting mechanism, there seems to be no serious disagreement concerning plaintiffs' contention that the engine could also be used to power various additional attachments such as go-carts, boats, pumps, boring machines, augers, winches, etc. However, the record is inconclusive as to what, if any, alterations or modifications had to be made in the engine itself to enable such alternate uses.

As it appears from the decision of the appellate court in the *Geo. S. Bush & Co., Inc.*, case *supra*, the record there included, with respect to the similar issue presented there, the following testimony:

X Q. So that there would be changes required to adopt it [the engine] to other uses?—A. Yes, definitely, means only that there would have to be changes in *the attachments*, not in the engine *per se*.

The testimony presented in this case is not so complete concerning the issue of possible alterations as that quoted above from the *Geo. S. Bush & Co., Inc.*, decision. The testimony herein does indicate that the subject engine could be used for other applications by, depending upon the particular application, the use of a "V-belt," or by taking the power "straight off" the end of the crank shaft with a coupling, or by making a "mounting bracket" for the engine.

However, there is no testimony sufficiently comprehensive and inclusive to indicate to what extent alterations to the engine or cutting mechanism are necessary to adapt the engine to other applications.

Such testimony, under the decisions cited above, was vital to plaintiffs' case. Accordingly, its absence in the record presented, does not permit us to find that plaintiffs have sustained the evidentiary burden imposed upon it. Therefore, we are constrained to overrule the claims for constructive segregation. Similarly, inasmuch as plaintiffs have failed to prove that the imported engine should be classified separately from the cutting mechanism, as an internal-combustion engine, they also have failed to sustain their claim that the replacement parts, identified in entry 36825 of protest 63/627, are classifiable as parts of internal-combustion engines.

Judgment will be entered accordingly.