(C.D. 2414)

Gehrig Hoban & Co., Inc.
Hudson Basic Machinery Corp. et. al. } *v.* United States

United States Customs Court, Second Division

(Decided October 23, 1963)

*Barnes, Richardson & Colburn* (*Norman C. Schwartz* of counsel) for the plaintiffs.

*John W. Douglas*, Assistant Attorney General (*Sheila N. Ziff*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges; FORD, J., dissenting

LAWRENCE, Judge: Plaintiffs' two protests listed in the annexed schedule have been consolidated for the purposes of trial and determination. They relate to merchandise described on the invoices as "Sparking Machine Tool ELERODA D. 1."

The collector of customs classified the merchandise in paragraph 372 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 372), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, as "machine tools," which Congress in said paragraph defines as "any machine operating other than by hand power which employs a tool for work on metal." Duty was imposed thereon accordingly at 15 per centum ad valorem.

It is the contention of plaintiffs that said machines are not embraced by the statutory definition of machine tools above quoted and, therefore, are properly classifiable in paragraph 353 of said act (19 U.S.C. § 1001, par. 353), as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, as articles having as an essential feature an electrical element or device, which are subject to duty at the rate of 13¾ per centum ad valorem.

The pertinent portions of the statutes involved herein are as follows:

Paragraph 372 of the Tariff Act of 1930:

\* \* \* machine tools, \* \* \*: *Provided further*, That machine tools as used in this paragraph shall be held to mean any machine operating other than by hand power which employs a tool for work on metal.

Paragraph 372 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, *supra:*

Machine tools (except jig-boring machine tools) _____ 15% ad val.

Paragraph 353 of the Tariff Act of 1930, as modified by the Torquay protocol, *supra:*

Articles having as an essential feature an electrical element or device, such as electric motors \* \* \* finished or unfinished, wholly or in chief value of metal, and not specially porvided for:

Batteries_____ \* \* \*

\*         \*         \*         \*         \*         \*         \*
Other \* \* \* _____ 13¾% ad val.

The record herein consists of the testimony of Frank Jaques, called on behalf of plaintiffs, and John S. Larkens, Jr., C. Bruce Minturn, and Warren A. Lipman, called on behalf of the defendant, as well as a number of exhibits.

An analysis of the record clearly indicates that the involved sparking machine tools can perform the functions of and can replace so-

called conventional machine tools, such as drilling machines, milling machines, broaches, hole broaches, shapers, lathes, and so forth. The record with equal clarity establishes that said imported machines perform the function of removing metal by use of an article such as exhibit C. Exhibit C is an electrode or tool designed in the shape or form of the hole or work to be performed, but does not have physical contact with the metal upon which the work is being done. The operation of said article in performing such work is done by the use of electrical voltage. A brief description of the operation was given by the witness Minturn as follows:

Q. Would you explain to the Court how Exhibit C is used in such a machine?—A. This tool is mounted in the equipment, and we read a gap voltage reference, voltage between the tool and the work, and in this case there was a hole put in the work prior to this operation, which allowed dielectric oil to be forced through so that you could wash the material which had been disintegrated away from the cavity, or the hole, being eroded. The end of the tool shows the amount of erosion which has taken place, on the end of the tool, and at the same time the amount of work, the amount of materials being removed, or similar amount, from a piece of steel below, as it penetrated through.

This tool is made in two sections. There is a roughing section, which is undersized, under the finished size, which is the back portion, and it allows a higher power to be turned on, and a faster removal of the material. After it has passed through the roughing section, the power is then cut back with a proper amount of over-cut, so that the spark distance is less, and we then finish the hole to the size required with the finishing section of the electrode.

JUDGE LAWRENCE: In that operation, does metal operate on metal by direct contact?

THE WITNESS: There's no actual direct contact. It varies, actually, from tenths, up to seven- or eight-thousandths, depending on your setting.

JUDGE LAWRENCE: Is it the force of electricity that does the work?

THE WITNESS: It is a spark coming out from this tool removing a globule of metal on the workpiece.

The issue thus presented to the court is whether the involved merchandise is encompassed by the definition of "machine tools" set forth in paragraph 372 of the Tariff Act of 1930, *supra*. There appears to be no question that the imported merchandise does fall within at least the first portion of said definition, to wit, "any machine operating other than by hand power." The question of whether the machine involved herein "employs a tool for work on metal" further narrows the issue.

Plaintiffs, in their brief, contend that the present article does not fall within the foregoing definition because of the following differences:

1. Conventional machine tools rely on direct physical contact between the workpiece and the tool. There is no direct physical contact whatsoever between the "tool" electrode of a spark erosion machine and the workpiece.

2. Conventional machine tools operate by an abrading or tearing to effectuate mechanical removal of the metal of the workpiece. Spark erosion ma-

chinery operates on a principle called "basic thermal shock", the exact nature of which is subject to varying explanations.

3. In the standard, conventional machine tool, the tool component must be harder than the workpiece, otherwise the workpiece will wear away the tool faster than the tool can wear away the workpiece. In spark erosion machinery, there is no requirement that the "tool" electrode be harder than the workpiece, because of absolute lack of mechanical contact.

Defendant, on the other hand, contends that the difference between the so-called conventional machine tools and the electrical discharge machine tools is not in their purpose, use, or finished product, but in the manner in which they work on metal, the former having physical contact, while the latter produces the same result using an electrical contact.

If this were a case of first impression, we would be inclined to hold the subject merchandise properly classifiable as a machine tool within the purview of paragraph 372 of the Tariff Act of 1930, as modified. However, the decision of our appellate court in *Keith Dunham Co.* v. *United States*, 26 CCPA 250, C.A.D. 24, dissuades us from such a conclusion. Before the court in the *Keith Dunham* case was an electrically driven device, invoiced as an "oxygen jet hand cutting machine" or a "secator" and parts thereof, consisting of an electric motor, a tachometer, a rheostat, and other essential parts, including a torch, which, when fully assembled, was used for the purpose of cutting metal plate on a predetermined line by means of an oxy-acetylene flame.

It was the opinion of this court (*Keith Dunham Co.* v. *United States*, 73 Treas. Dec. 721, T.D. 49532) that a secator was a machine tool, as that term is defined in the statute (paragraph 372), and that it also was a portable tool containing an essential electrical feature (paragraph 353). The trial court concluded, however, that since the congressional definition of a machine tool is "* * * any machine operating other than by hand power which employs a tool for work on metal," and there being no such limitation on portable tools provided for in paragraph 353, the provision in the latter paragraph for portable tools having as an essential feature an electrical element or device was the more specific provision.

The appellate court affirmed the judgment of the court below but upon quite different grounds. It agreed with the trial court in finding that a secator was a "machine" "* * * since it is clearly shown by the record to be a mechanical contrivance which utilizes electric energy for the transmission of motion. *Simon, Buhler & Baumann* v. *United States*, 8 Ct. Cust. Appls. 273, T.D. 37537; *United States* v. *Janson Co.*, 16 Ct. Cust. Appls. 315, T.D. 43075."

The court of appeals found that the meaning of the statutory definition of machine tools in paragraph 372, *supra*, was not free from

ambiguity and resorted to the history of the tariff act to aid in its determination of the question before it. After doing so, the court said "We believe that if the Congress had intended machine tools to include a power-driven machine employing a flame spraying blowtorch for work on metal it would have so expressed itself."

Further, the court said "The 'secator' might well be a machine tool in the common acceptation of that term. It is a machine and both litigants agree that it is a tool. Therefore, it is a machine tool as that term is ordinarily used. But Congress has specifically defined a machine tool in paragraph 372, *supra*. As we have previously pointed out, the 'secator' is not a machine tool within the definition set out by the Congress."

Applying the rationale of our appellate court in the *Keith Dunham* case to the factual situation before us, we find that the sparking machine tool covered by the instant importation is designed to perform work on metal without having physical contact with it, as was the fact with the secator in the *Keith Dunham* case. In one instance, the operation of the device is performed through the medium of an electrode while, in the other, an oxy-acetylene blowtorch is the cutting medium. It follows, therefore, that the sparking machine tool in issue is not a machine tool of the kind provided for in paragraph 372 of the Tariff Act of 1930, as modified, *supra*, as classified by the collector of customs.

From the record before us, it stands unrefuted that an electrode, such as exhibit C herein, powered by electric voltage, is essential to the functioning of the sparking machine tool in issue.

Accordingly, the imported merchandise comes within the purview of the provision for articles having as an essential feature an electrical element or device in paragraph 353 of the Tariff Act of 1930, as modified, *supra*, for which duty at the rate of 13¾ per centum ad valorem is provided, as alleged by plaintiffs. The claim in the protests to that effect is, therefore, sustained.

Judgment will issue accordingly.

DISSENTING OPINION

FORD, Judge: I am of the opinion that the classification herein is correct.

In the case of *Alex. Benecke* v. *United States*, 30 CCPA 55, C.A.D. 214, which involved steel rolls for use in a rolling mill used in cold-rolling steel, the appellate court *held* said articles to be parts of machine tools. In reviewing what constituted "machine tools," the court made the following observations:

The term "machine tools" seems to have first appeared in the 1909 tariff act where a duty upon them was provided under that designation but the term was not defined. ·

    *       *       *       *       *       *       *

The 1913 tariff act for the first time in tariff legislation, so far as our researches have disclosed, gave the definition of machine tools embraced in the second *proviso* of paragraph 372 as quoted *supra*, and it was repeated in the same words in the 1922 and 1930 acts. By its terms it limits any machine tools covered by the paragraph to those used for work on metal. * * *

In the case of *Keith Dunham Co.* v. *United States*, 26 CCPA 250, C.A.D. 24, relied upon by the majority, there was involved the classification of merchandise which comprised part of a device, known as a "secator." The function of the secator was cutting through metal plate on a predetermined line by means of an oxy-acetylene flame, emanating from the torch. The issue there presented was whether or not the "secator" was part of a machine tool under paragraph 372 of the Tariff Act of 1930, or a portable tool under the provisions of paragraph 353 of the Tariff Act of 1930. The court therein *held* said merchandise not to be a machine tool. The court also stated that the meaning of the statutory definition of "machine tools" is not free from ambiguity and, accordingly, reviewed the information contained in the Summary of Tariff Information, 1920, the Summary of Tariff Information, 1929, and various lexicographers.

The following statements were then made by the appellate court, in the *Keith Dunham* case, *supra:*

In addition to what has been said, the cutting of steel plate by means of oxyacetylene flame was well known in the metal industry long before the Tariff Act of 1930 became a law. We find in the 1927 edition of Thorpe's Dictionary of Applied Chemistry, Vol. I, at page 55, the following:

*Acetylene Welding and Metal Cutting.*—Acetylene is largely employed for autogenous welding and for metal cutting; in the latter case extra oxygen being supplied so that the metal itself is burnt away. * * *

There are two systems of operating; in the high pressure system the oxygen is delivered from an ordinary cyclinder under pressure and the acetylene, dissolved in acetone under pressure, is also supplied from cylinders. Both cylinders are fitted with special governors, as a perfect regulation of the flame is one of the main conditions of success. This system has the *great advantage of a portable outfit*, and can be applied in confined spaces, but it is more expensive than the alternative system. [Italics supplied.]

We believe that if the Congress had intended machine tools to include a power-driven machine employing a flame spraying blowtorch for work on metal it would have so expressed itself. Therefore, in view of what has been herein set forth we hold that the imported merchandise is not a machine tool as defined in paragraph 372, *supra*. [Italics quoted.]

A review of the legislative history also leads me to conclude that the definition of "machine tools," on or about the date of the enactment of the Tariff Act of 1930, June 17, 1930, was not one in which all industry concurred. There also appears to be no doubt that the tools referred to at that time were the conventional machine tools utilizing direct physical contact in the performance of their functions.

Bearing in mind that approximately 33 years have passed since the enactment of the present tariff act, and also taking into consideration the various technological advances made during this period and the very principle of law that tariff acts are written for the future as well as for the present, lead me to but one reasonable conclusion. The record herein establishes that the spark erosion machine has only recently been commercially produced and was not known on or about the date of the enactment of the Tariff Act of 1930, whereas it is a matter of common knowledge, of which the appellate court, in the *Keith Dunham* case, *supra*, took judicial notice, that metal had been cut by oxy-acetylene torches for a period prior to 1929. The secator, based upon the record therein, was used for the sole purpose of cutting metal plate on a predetermined line. The imported merchandise performs the same function as a conventional machine tool and, in fact, is replacing so-called conventional machine tools, such as drilling machines, milling machines, broaches, hole broaches, shapers, lathes, etc.

There is nothing in the record in the *Keith Dunham* case, *supra*, which established that the involved secator replaced any existing machine tool. The fact that the acetylene process employed by the secator was known prior to the enactment of the Tariff Act of 1930, led the appellate court to conclude that if Congress had intended to include such an article, it would have so provided. I am in agreement with the reasoning of the decision in said case based upon the factual situation of record involved therein. However, the factual situation here is totally different and is, therefore, distinguishable from the *Keith Dunham* case, *supra*.

In a recent decision of the appellate court in the case of *Lanston Industries, Inc.* v. *United States*, 49 CCPA 123, C.A.D. 807, it was *held* that certain Monophoto machines were entitled to free entry of duty under the provisions of paragraph 1643 of the Tariff Act of 1930, as typesetting machines, rather than as photographic cameras and parts, under the provisions of paragraph 1551 of the Tariff Act of 1930. The Monophoto machines involved therein employed a new technique developed subsequent to the enactment of the Tariff Act of 1930, known as photo-composing, which produces a photographic transparency, rather than producing a metal type. The court therein made the following observation:

The witness, who was expert in this field, constantly referred to the hot metal, or Monotype process, as the old-fashioned process. Thus we have before us an example of technical progress requiring that we consider whether something necessarily unknown to Congress when the words "all typesetting machines" were written into the statute was intended to be included by that clause. On the facts of this case, we are unable to see in the Monophoto machine anything more than a technical advance in typesetting machines which Congress

must have foreseen. The Monotype machine, having been well-known in the printing industry long before 1930, was presumably clearly within the ambit of paragraph 1643. Its modern version, the Monophoto, we believe, falls in the same category. The language used, *"all* typesetting machines," [our emphasis] does not suggest that we should try to search out nice differences between one kind and another or exclude improvements. We are also mindful of the truism that tariff acts are written for the future. *Pickhardt* v. *Merritt*, 132 U.S. 252, 257; *Newman* v. *Arthur*, 109 U.S. 132, 138. [Italics quoted.]

In order to have a tariff act which represents more than a static document, technological advancements must of necessity be taken into consideration. Especially is this true where the record discloses that the sparking process employed by the involved machine is, in fact, replacing conventional machine tools.

In view of the foregoing, I would hold the involved Eleroda machines to be machine tools under the provisions of paragraph 372 of the Tariff Act of 1930, as modified, *supra,* as classified.