UNITED STATES v. GEHRIG HOBAN & CO., INC., HUDSON BASIC MACHINERY CORP., WALTER S. RYAN (No. 5161)*

United States Court of Customs and Patent Appeals, April 8, 1965

*John W. Douglas*, Assistant Attorney General, *Alan S. Rosenthal, Samuel J. Heyman, Florence W. Roisman* for the United States.

*Barnes, Richardson & Colburn* (*E. Thomas Honey* and *Norman C. Schwartz*, of counsel) for appellees.

[Oral argument February 1, 1965, by Mrs. Roisman and Mr. Honey]

Before WORLEY, Chief Judge, and RICH, SMITH, and ALMOND, Jr, Associate Judges

SMITH, Judge, delivered the opinion of the court:

---

*C.A.D. 853.

The United States appeals from a decision and judgment of the Customs Court, Second Division (51 Cust. Ct. 81, C.D. 2414) which sustained the consolidated protests of appellees.

▮ The merchandise in issue is invoiced as "Sparking Machine Tool Eleroda D. 1." The collector classified the goods as "machine tools" under paragraph 372 of the Tariff Act of 1930 (as modified by GATT, 82 Treas. Dec. 305, T.D. 51802) and imposed duty thereon accordingly at 15 per cent ad valorem. It is the contention of appellees, embodied in their protests and urged successfully below, that the goods are properly classifiable as "Articles having as an essential feature an electrical element or device," at 13¾ per cent ad valorem under paragraph 353 of the 1930 Act (as modified by the Torquay Protocol to GATT, 86 Treas. Dec. 121, 165, T.D. 52739).

Paragraph 372, supra, contains the following definition of machine tools:

*Provided further*, That machine tools as used in this paragraph shall be held to mean any machine operating other than by hand power which employs a tool for work on metal.

The sole issue on this appeal is whether the instant goods are "machine tools" within the meaning of the above definition. The lower court held they were not, with one judge dissenting.

From the testimony and exhibits of record, it appears that the Eleroda D–1 is a unique type of machine designed for metal working. The metal to be worked acts as an electrode, as does the "tool" of the machine. When a voltage is impressed between the tool and the workpiece, a rapid and intermittent spark jumps the gap therebetween.

Although the precise mechanism of metal removal is apparently not fully understood, it seems that the spark knocks off small particles (of the order of several microns in diameter) of metal from the workpiece. During operation, a dielectric fluid is pumped around and between the tool and the workpiece to remove the metal globules and cool the work.

The testimony indicates that the tool itself never touches the work, the gap always remaining of the order of a few thousandths of an inch. The tool is shaped according to the conformation of the work to be done on the workpiece, and has two portions. One part, which is undersized, is used to "rough out" the work; the other is used for precision finishing.

The Customs Court found from the record that:

* * * the involved sparking machine tools can perform the functions of and can replace so-called conventional machine tools, such as drilling machines, milling machines, broaches, hole broaches, shapers, lathes, and so forth. The record with equal clarity establishes that said imported machines perform the function of removing metal by use of an article such as exhibit C. Exhibit C is an electrode or tool designed in the shape or form of the hole or work to be per-

formed, but does not have physical contact with the metal upon which the work is being done. * * *

The court went on to say :

If this were a case of first impression, we would be inclined to hold the subject merchandise properly classifiable as a machine tool within the purview of paragraph 372 of the Tariff Act of 1930, as modified. However, the decision of our appellate court in *Keith Dunham Co.* v. *United States*, 26 CCPA 250, C.A.D. 24, dissuades us from such a conclusion. * * *

We agree with the Customs Court concerning the ability of the instant device to perform most of the functions of and directly replace many conventional machine tools. We also think that the instant goods fall within the literal statutory definition of "machine tools" as machines employing "a tool for work on metal." Thus, were it not for the *Keith Dunham* case, we would feel justified in a very summary reversal. But since the majority of the court below felt compelled by this court's decision in *Keith Dunham*, we deem it desirable to point out wherein we agree with the dissenting judge below that *Keith Dunham* is distinguishable and not controlling here.

In *Keith Dunham*, the merchandise was invoiced as "oxygen jet hand cutting machines," known as "secators." The device essentially was a motor-driven oxy-acetylene torch capable of propelling itself along a predetermined course on a metal plate or sheet and thus making a regular cut in the metal. The holding was that such a device was not a machine tool within the meaning of paragraph 372.

However, as the dissenting judge below points out :

There is nothing in the record in the *Keith Dunham* case, *supra*, which established that the involved secator replaced any existing machine tool. The fact that the acetylene process employed by the secator was known prior to the enactment of the Tariff Act of 1930, led the appellate court to conclude that if Congress had intended to include such an article, it would have so provided. I am in agreement with the reasoning of the decision in said case based upon the factual situation of record involved therein. However, the factual situation here is totally different and is, therefore, distinguishable from the *Keith Dunham* case, *supra*.

* * * * * * *

In order to have a tariff act which represents more than a static document, technological advancements must of necessity be taken into consideration. Especially is this true where the record discloses that the sparking process employed by the involved machine is, in fact, replacing conventional machine tools.

We are in complete agreement. As we observed in a recent case, we are "mindful of the truism that tariff acts are written for the future." *Lanston Industries, Inc.* v. *United States*, 49 CCPA 123, 128, C.A.D. 807.

The appealed judgment is *reversed*.

MARTIN, J., did not sit or participate in the decision of this case.