(C.D. 4299)

KRYOS, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided November 26, 1971)

*Stein & Shostak* (*S. Richard Shostak* of counsel) for the plaintiff.
*L. Patrick Gray, III,* Assistant Attorney General (*Harold L. Grossman,* trial attorney), for the defendant.

Before RAO, FORD, and NEWMAN, Judges

FORD, Judge: The cases listed in schedule "A," annexed hereto and made a part hereof, involve the proper classification of certain

liquid nitrogen spray freezers which were classified under item 661.70, Tariff Schedules of the United States, as industrial machinery for the treatment of materials by a process involving temperature change. Duty was assessed at the prescribed rate of 11 per centum ad valorem or 10 per centum ad valorem depending upon the date of entry.

Plaintiff contends the imported merchandise is properly dutiable at the rate of 9 per centum ad valorem or 8 per centum ad valorem, depending upon the date of entry, under the provisions for refrigerating equipment and parts thereof as provided for in item 661.35, Tariff Schedules of the United States.

The pertinent portions of the statutes involved provide as follows:

Item 661.70 of the Tariff Schedules of the United States as modified by T.D. 68–9:

| | | Rates of Duty | |
| | | 1968 | 1969 |
|---|---|---|---|
| | Industrial machinery, plant, and similar laboratory equipment, whether or not electrically heated, for the treatment of materials by a process involving a change of temperature, such as heating, cooking, roasting, distilling, rectifying, sterilizing, pasteurizing, steaming, drying, evaporating, vaporizing, condensing, or cooling; instantaneous or storage water heaters, non-electrical; * * *: | | |
| 661. 65 | Instantaneous or storage water heaters, and parts thereof_____ | * * * | * * * |
| 661. 70 | Other_____ | 11% ad val. | 10% ad val.[1] |

Item 661.35 of the Tariff Schedules of the United States as modified by T.D. 68–9:

| | | | |
|---|---|---|---|
| 661. 35 | Refrigerators and refrigerating equipment, whether or not electric, and parts thereof_____ | 9% ad val. | 8% ad val.[1] |

The record consists of the testimony of one witness called on behalf of plaintiff and two exhibits received on its behalf as well as the official papers which were received in evidence without being marked.

At the outset of the trial, counsel for plaintiff abandoned all claims in the protests other than its claim under item 661.35, *supra*. Accordingly, all other claims are dismissed.

---

[1] Rate reduced effective 1/1/69 pursuant to Presidential Proclamation published in T.D. 68–9.

The witness, Mr. Wayne J. Wilson, president of plaintiff corporation, is a well qualified mechanical engineer having substantial experience with liquid nitrogen freezing systems. The imported machine was described as an insulated tunnel or chamber containing a conveyor belt and other mechanical devices to motivate or power the conveyor belt and a system of vapor circulating fans. The specific purpose of the machine is to freeze or cool food articles. The freezing is accomplished by the liquid nitrogen being introduced into the machine. The liquid nitrogen vaporizes on contact with the food articles being conveyed through the machine and releases the heat of vaporization contained in the nitrogen. This removes the heat from the food articles and replaces it with the nitrogen, thereby lowering the temperature of the food quite rapidly. As the food articles travel through the machine, the entire food article from the core to the surface equalizes in temperature so that when it is discharged from the machine it is frozen. There are instances, particularly in connection with poultry, when the article is merely cooled rather than frozen for the purpose of bacteria control.

This system of freezing does not physically change the product except for the fact that it is frozen. The conventional freezing system while accomplishing the same results, frozen food articles, does create a moisture loss and consequent desiccation of the product. The freezing under this system may be accomplished from two minutes to twenty minutes depending upon the density of the article. By conventional methods, this would require two hours to twenty-four hours.

Plaintiff does not deny the imported machine treats material by a process involving a change of temperature but contends the imported merchandise is refrigerating equipment and as such is more specifically provided for under item 661.35, *supra*.

For relative specificity to be applicable, the imported merchandise must fall within the term "refrigerating equipment" as set forth in item 661.35. As there is no issue of commercial designation claimed, the common meaning of the statutory language is presumed to be ascribed to the tariff term. Such common meaning is a matter of law which is determined on the basis of the court's own understanding of the term. In arriving at this understanding, the court may consider dictionary definitions and other lexicographic sources to refresh its recollection. *United States* v. *O. Brager-Larsen*, 36 CCPA 1, C.A.D. 388 (1948).

Among the definitions of "refrigerate" in Webster's Third New International Dictionary (1963) is the following definition:

refrigerate * * * 1: * * * to freeze or chill (food) for preservation * * *

In the 1970 edition of the Encyclopaedia Britannica, "refrigeration" is described as follows (Vol. 19 at pages 63 and 70):

REFRIGERATION, the process of lowering the temperature inside an insulated enclosure by extracting heat and rejecting it to the surroundings or some other external medium of higher temperature. * * *

\* \* \* \* \* \* \*

* * * refrigeration is used extensively: food processing * * *; industrial and engineering applications for liquefied storage and transportation of industrial gases * * *.

The above definitions conform to the court's understanding of the terms "refrigerate" and "refrigeration" and fall within the actual function of the imported merchandise which is to freeze food products. Whether this process is by a conventional method or a new type of method such as is involved herein matters not. The principle of technological advancements was considered in *United States* v. *Gehrig Hoban & Co., Inc., et al.*, 52 CCPA 32, C.A.D. 853 (1965), which involved certain sparking machines which performed the same function as a number of conventional machine tools but did not employ a tool as such. The function in that case was performed by an electric arc. The court held them to be machine tools and quoted with approval the following statement from the dissenting opinion below.[2] "In order to have a tariff act which represents more than a static document, technological advancements must of necessity be taken into consideration."

The imported merchandise is in truth and in fact refrigerating equipment. As we consider the involved machines to be refrigerating equipment, we must now determine whether the provision under which classification was made or the claimed provision is more specific.

In the case of *F. L. Smidth & Company* v. *United States*, 56 CCPA 77, C.A.D. 958 (1969), certain rotating kilns were classified under item 661.30, Tariff Schedules of the United States, which provides for industrial and laboratory furnaces, etc., and claimed to be subject to classification under item 661.70, *supra* (the provision under which classification in the instant case was made). The court therein made the following observation:

* * * Relative specificity is now made an express part of the legislation. The pertinent parts of General Headnote 10 read as follows:

For the purposes of these schedules

[2] *Gehrig Hoban & Co., Inc., et al.*, 51 Cust. Ct. 81, C.D. 2414 (1963).

(a) * * * the provisions describing the classes of imported articles and specifying the rates of duty to be imposed thereon are subject to the rules of interpretation set forth herein and to such other rules of statutory interpretation, not inconsistent therewith, as have been or may be developed under administrative or judicial rulings;

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(c) an imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically described it, but * * * [what follows not applicable]

This appears to us to mean this: if an article is determined to be clearly described in two or more items, selection of the controlling item by relative specificity is mandatory and takes precedence over other judge-evolved methods of resolving ambiguity, including resort to extrinsic aids such as legislative history.

We agree with appellant that item 661.70 does describe the instant merchandise. We do not agree it is more specific. It is not, and item 661.30 is, the item having requirements which are "more difficult to satisfy." *Arthur J. Humphreys, et al.* v. *United States,* 56 CCPA 67, C.A.D. 956 (decided March 6, 1969) ; *United States, etc.* v. *Simon Saw & Steel Co., supra.* It is hard to imagine any article covered in 661.30 that is not also covered in 661.70, and furthermore, 661.70 embraces such articles whether or not electrically heated. Besides the heating embraced by 661.30, 661.70 embraces cooling devices. A number of functions are enumerated in 661.70, for which the furnaces and ovens of 661.30 would not be used: distilling, rectifying, sterilizing, etc.

Following the rationale therein, it is apparent that the provision of item 661.35, *supra,* for refrigerating equipment is likewise more specific than the provisions of item 661.70, *supra.*

The claim in the protest under item 661.35, *supra,* is therefore sustained.

Judgment will be entered accordingly.